**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SUPREME BUMPERS, INC., d/b/a Precision Plating, Respondent.**

**No. 79–1575.**

United States Court of Appeals, Sixth Circuit.

Argued April 10, 1981.

Decided and Filed May 22, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Michael White and John Elligers, Washington, D. C., Bernard Gottfried, Director Region 7, N. L. R. B., Detroit, Mich., for petitioner.

Donald M. Mewhort, Jr., Ronald J. McCracken, Shumaker, Lupe & Kendrick, Tim McCarthy, Toledo, Ohio, for respondent.

Before EDWARDS, Chief Judge, KENNEDY, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

The National Labor Relations Board seeks enforcement of its order[1] requiring the employer in this case to rehire two employees who were found to have been discharged, in violation of §§ 8(a)(1) and (3) of the National Labor Relations Act, *as amended,* 29 U.S.C. §§ 151–169 (1976).

On consideration of the record before and the opinion of the Administrative Law Judge who heard the evidence, we find a record sharply in conflict as to why the discharges occurred. The company contended that the discharges were due to re-

1. 243 N.L.R.B. No. 45.

peated absenteeism on the part of these two employees, whereas the employees' testimony was to the effect that they were among the strongest of the advocates of a union in the plant and that the discharges took place only after an effort was made on behalf of unionization.

The Administrative Law Judge made an analysis of the credibility of the employee witnesses as compared to that of the management witnesses too lengthy to quote in full. But, three paragraphs we deem appropriate:

### c. The discharges

In view of the foregoing, I conclude that Respondent had knowledge of the union activities and sympathies of T. Jones and James Burton, and further evinced an animosity toward unionization by its employees of its Detroit plant. The discharges occurred within the context of interrogations and threats. Burton was the prime activist for the Union. His discharge occurred shortly after Fred Jones became aware of the fulfillment of Burton's threat to organize the Union. T. Jones' discharge thereafter occurred subsequent to his continued expressions of support for the Union. In view of the circumstances herein, including Fred Jones' constant presence in the shop and proximity to employees, including carpooling, it can be inferred that in any event, Respondent was well aware of the full extent of the union organizing efforts of its employees. *Famet, Inc.*, 202 NLRB 409 (1973); *Wiese Plow Welding Co., Inc.*, 123 NLRB 616 (1959).

Respondent contends that Burton and T. Jones were deficient in their work habits. Yet, they were never disciplined for their alleged disruptive activities. Other employees had left priority work undone. There is no evidence that they were disciplined. I do not find the testimony of Fred Jones and Opalewski credible with respect to the extent of the discriminatees alleged deficiencies. Their testimony was inconsistent and puts Respondent in a posture of advancing shift-

ing reasons for the discharges. When Burton was disciplined in November, he was disciplined solely for absenteeism. When he was laid off, no initial reference was made to his deficient work performance. Had his misconduct been as severe as portrayed, surely some reference in Respondent's records would have been made of it. Similarly, the termination notice in the records of each employee refers to no such misbehavior. I credit the testimony of Burton and T. Jones that no reference of work deficiencies was ever mentioned to them upon their terminations.

With respect to the absenteeism records of both men, such on its face appears excessive. However, in comparison with other polishers, their records are not exceedingly disproportionate, particularly with respect to months of their employment in 1978. I find persuasive Burton's testimony that the critical factor for piece rate production is not so much the hours clocked in, but rather, the number of bumpers that were produced. There was no testimony by Respondent's witnesses of any deficiency with respect to the actual number of bumpers produced by either employee. In this respect, Opalewski characterized these employees as "good" or "very good." Thus, they apparently had the capacity and did produce satisfactorily in view of their facility as qualified and experienced polishers.

The decisive finding of fact on the part of the Administrative Law Judge was: "I conclude that the real reason for the discharges in this case is the union activities and sympathies of the dischargees."

This court, of course, is not retrying the sharp factual dispute presented by this record. All we are required to determine is whether or not there is substantial evidence on the whole record to support the findings of the Board, which accepted the Administrative Law Judge's recommendations. Since we do find such substantial evidence, enforcement is granted in relation to the

order of the National Labor Relations Board.