**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**E.I. DuPONT DE NEMOURS, Respondent.**

**No. 83–5450.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 25, 1984.

Decided Dec. 14, 1984.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Helen Morgan, L. Pat Wynns (argued), N.L.R.B., Washington, D.C., for petitioner.

Charles Mitchell, Deborah Pierce, E.I. DuPont De Nemours & Co., Wilmington, Del., William F. Kirsch, Jr. (Lead), Hieskell, Donelson, Bearman, Adams, Williams & Kirsch, Maurice Wexler (argued), Memphis, Tenn., for respondent.

Before JONES and CONTIE, Circuit Judges, and GILMORE, District Judge.*

PER CURIAM.

The National Labor Relations Board (the Board) seeks enforcement of its order requiring E.I. DuPont De Nemours (DuPont) to cease and desist from unfair labor practices and to reinstate an employee who DuPont previously discharged. We find that substantial evidence on the record supports the NLRB's findings and therefore enforce the order.

During the spring and summer of 1979, three sets of charges of unfair labor practices were filed against DuPont by Teamsters Local 515, an affiliate of the International Brotherhood of Teamsters (the Union). In January, 1980, further charges were added and a final consolidated complaint was issued. An Administrative Law Judge (the ALJ) heard the charges. One set of charges was disposed of by informal settlement. DuPont denied engaging in unfair labor practices, including the alleged unlawful discharge of three employees.

The ALJ found that DuPont had committed a number of independent violations of section 8(a)(1) of the National Labor Relations Act (the Act) 29 U.S.C. 151, et seq. He also found that one of the three employees was unlawfully discharged, although he found that the other two employees were not unlawfully discharged. The Board affirmed the ALJ's decision in all respects except one. The Board found that a second of the three discharges was also unlawful. The Board then applied for enforcement of its order. Prior to that time the NLRB and DuPont settled the issue of the second discharged employee. Only the independent violations of the Act and the discharge of James Merriman are currently before this Court.[1]

The events involved in this litigation occurred at DuPont's Chattanooga, Tennessee nylon plant (the plant). The plant produces nylon yarn and nylon cordage. It employed approximately 2,800 persons at the time in question. The plant operated seven days a week, twenty-four hours a day on a four shift basis.

In February, 1979, the Union filed a representation petition with the Board, by which it sought representation rights at the plant. On March 14, an NLRB supervised election was scheduled. That election was conducted on April 25 and 26, 1979. Approximately 2,800 employees in the bargaining unit were eligible to vote. Over 2,700 votes were cast. The Union lost by a margin of 43% to 57%. No objections regarding the election were filed and the Board certified the results.

All of DuPont's alleged independent violations of section 8(a)(1) of the Act occurred

---

* The Honorable Horace W. Gilmore, District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. The parties briefed the issue of whether an employee's right to representation during an investigatory interview, provided by *NLRB v. J. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), applies to the facts of this case. Before oral arguments, we granted the Board's motion to sever that issue and remand it to the Board for further consideration.

during the campaign period of this election, from late February to late April, 1979. These violations primarily involved informal contacts between supervisors and employees during which the likelihood that the Union would win the election was discussed. The supervisors initiated most of these contacts. Several contacts between supervisors and employees involved threats of discipline or of lost opportunities for advancement. In two instances the alleged violation involved the statements of supervisors to groups of twelve or so employees at information and discussion meetings. The Board found that DuPont repeatedly violated the Act by coercively interrogating employees about the Union and their Union activities, by threatening the futility of Union representation, by threatening reprisals for Union activity, by threatening closure of a section of the plant if the Union went on strike, by promulgating an overbroad no solicitation rule, by promising benefits if the union did not win the election, by interfering with an employee's right to wear Union insignia, and by discriminatorily denying employees access to the plant.

The second issue before the Court involves the discharge of union activist James Merriman. Merriman had been an employee at the plant for over fourteen years at the time he was discharged. Merriman was considered a satisfactory employee. He was also a known leading union activist, who was one of the half dozen employees who contacted the Union about organizing the plant. In addition to being one of three union coordinators responsible for union organizational efforts among the approximately 600 employees on his shift, he demonstrated his outspoken union support through such paraphernalia as buttons, tee shirts, jackets, caps, and bumper sticker emblazoned with the Union's insignia.

Merriman operated a spinning machine which wound nylon yarn onto bobbins. He was responsible for eight of thirty-two positions on his machine. On May 16, 1979, about three weeks after the election, the nylon yarn broke at all eight positions Merriman operated. The spinning machines

operate erratically. Merriman's machine was long overdue for an overhaul. The yarn often breaks, but to lose all eight positions within a short period of time is unusual. DuPont investigated the breakages and concluded that Merriman sabotaged his machine. Merriman steadfastly denied the charge of sabotage and alleged that DuPont discharged him in retaliation for his Union activities.

Both issues before the Court are questions of fact. Therefore the Court reviews the NLRB's findings on the basis of the substantial evidence rule. *Universal Camera Corporation v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *NLRB v. Naum Brothers, Inc.*, 637 F.2d 589, 591 (6th Cir.1981).

Section 7 of the Act guarantees employees "the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purposes of collective bargaining or other mutual aid or protection ...." Section 8(a)(1) of the Act implements section 7 by making it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7." An employer violates section 8(a)(1) of the Act by coercively interrogating its employees about their union activities. *Coil-A.C.C., Inc. v. NLRB*, 712 F.2d 1074, 1076 (6th Cir.1983); *NLRB v. Franklin Property Co., Inc.*, 617 F.2d 447, 448 (6th Cir.), *cert. denied*, 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *Larand Leisurelies, Inc. v. NLRB*, 523 F.2d 814, 819 (6th Cir.1975). An interrogation is coercive if, when viewed in all the surrounding circumstances, "its probable effect" tends to interfere with the employees' free exercise of their Section rights, *Larand Leisurelies*, 523 F.2d at 819; *NLRB v. Armstrong Circuit, Inc.*, 462 F.2d 355, 357 (6th Cir.1972).

An employer also violates section 8(a)(1) of the Act by threatening employees with reprisals and with the futility of

unionization. *NLRB v. Frederick's Foodland, Inc.,* 655 F.2d 88, 89 (6th Cir.1981); *NLRB v. Naum Brothers, Inc.,* 637 F.2d 589, 592 (6th Cir.1981). In determining whether a statement is a coercive threat, the Board considers the "total context" of the situation and "is justified in determining the question ... from the standpoint of employees over whom the employer has a measure of economic power." *Henry I. Seigel Co. v. NLRB,* 417 F.2d 1206, 1214 (6th Cir.1969), *cert. denied,* 398 U.S. 959, 90 S.Ct. 2175, 26 L.Ed.2d 545 (1970). *Accord Capital Broadcasting Corp. v. NLRB,* 479 F.2d 329, 331 (6th Cir.1973). An employer also violates section 8(a)(1) when it promises economic benefits in order to discourage union support. *NLRB v. Frederick's Foodland,* 655 F.2d at 89; *NLRB v. Stemun Manufacturing Co.,* 423 F.2d 737, 740 (6th Cir.1970). Oral pronouncement that solicitation is prohibited on company property violates 8(a)(1), notwithstanding the existence of a valid no-solicitation rule. *NLRB v. Deutsch Co., Metal Components Division,* 445 F.2d 902, 905 (9th Cir.1971), *cert. denied,* 405 U.S. 988, 92 S.Ct. 1248, 31 L.Ed.2d 454 (1972). Discriminatory denial of employees' access to the plant also violates 8(a)(1). *Eastern Maine Medical Center v. NLRB,* 658 F.2d 1, 5 (1st Cir.1981); *NLRB v. Roney Plaza Apartments,* 597 F.2d 1046, 1050 (5th Cir. 1979).

◼ We find that substantial evidence supports the NLRB's findings that DuPont repeatedly violated section 8(a)(1). A supervisor approached an employee and questioned the employee regarding his reasons for supporting the Union. The supervisor reminded the employee that DuPont had recognized his contribution to the company and that he had the potential to become a supervisor, but that his open support of the Union by wearing union insignia stood in the way. A second supervisor later approached another employee and stated that only the employee's open support of the Union prevented him from being "supervisory material."

During two information and discussion meetings called by supervisors, each involving approximately a dozen employees, the supervisors emphasized the futility of union organization by stating that wages and benefits would not differ from what they would be without the Union. Another supervisor told a group of employees that if the Union called a strike over wages and benefits a significant portion of the plant would never reopen. Still another supervisor told an employee that if the Union did not win the representation election the company would provide a substantial cost of living increase. A supervisor approached an employee who was soliciting in a break zone on nonworking time and told him that solicitation was prohibited on Du-Pont property. The supervisor then reinforced his statements by requiring the employee to accompany him to an office, where the supervisor further elaborated upon solicitation restrictions. Finally, through a supervisor, DuPont denied access to the Plant to two employees who were union sympathizers. The employees had taken vacation time to campaign for the Union and sought access only to the plant cafeteria, a nonworking area, to eat lunch with their co-workers. DuPont did not have a rule prohibiting off-duty employees from having access to the plant, and under the rule DuPont did have, it had routinely granted requests for such access until this incident.

On the basis of DuPont's coercive conduct we enforce the NLRB's order requiring DuPont to cease and desist from the unfair labor practices found, and from otherwise interfering with, restraining, or coercing its employees in the exercise of their section 7 rights.

◼ Section 8(a)(3) of the Act makes it an unfair labor practice for an employer to discriminate "in regard to ... tenure of employment or any term or condition of employment to ... discourage membership or any term or condition of employment to ... discourage membership in any labor organization ...." It is settled that if an employer discharges "an employee for hav-

ing engaged in union activities and has no other basis for the discharge, or if the reasons that he proffers are pretextual," the employer violates section 8(a)(3) and (1) of the Act. *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 398, 103 S.Ct. 2469, 2472, 76 L.Ed.2d 667 (1983). Moreover, the Supreme Court has affirmed that where an employer's opposition to protected activity has been shown to be a motivating factor in a decision to take adverse action against an employee, the employer will be found to have violated the Act unless it is able to demonstrate that the adverse action would have taken place even in the absence of protected conduct. *NLRB v. Transportation Management Corp.*, 103 S.Ct. at 2471.

■ Motive is subjective, and an employer rarely admits that an employee has been discharged because of activities protected by the Act. Therefore, the Board may rely on circumstantial evidence in determining actual motive. *NLRB v. Price's Pic-Pac Supermarkets, Inc.*, 707 F.2d 236, 240 (6th Cir.1983); *NLRB v. G. & S. Metal Products Co., Inc.*, 489 F.2d 441, 443 (6th Cir.1973); *NLRB v. Buckhorn Hazard Coal Corporation*, 472 F.2d 53, 55–56 (6th Cir.1973).

■ Antiunion motivation reasonably may be inferred from a variety of factors, such as the company's expressed hostility towards unionization combined with knowledge of the employee's union activities, *NLRB v. Supreme Bumpers, Inc.*, 648 F.2d 1076 (6th Cir.1981); *Capital Broadcasting Corp. v. NLRB*, 479 F.2d 329, 330 (6th Cir.1973); proximity in time between the employee's union activity and his discharge, *Jim Causley Pontiac v. NLRB*, 620 F.2d 122, 126 (6th Cir.1980); and disparate treatment of the discharged employee compared to other employees with similar work records or offenses, *Borel Restaurant Corp. v. NLRB*, 676 F.2d 190, 192–193 (6th Cir.1982); *NLRB v. Supreme Bumpers, Inc.*, 648 F.2d 1076, 1077 (6th Cir.1981).

■ We find that substantial evidence supports the NLRB's finding that DuPont discharged James Merriman in retaliation for his activities in support of the Union. DuPont's active hostility to employees' protected conduct has been demonstrated. Merriman's outspoken support of the Union was well-known to DuPont. Among Merriman's union activities were attempting to organize his shift of 600 employees, displaying Union insignia on his clothing and on his truck, which he parked near the plant's main gate, organizing a boycott of DuPont information and discussion meetings, and taking his vacation during the week of the representation election in order to campaign for the Union.

A mere three weeks after the close of the representation campaign, Merriman was discharged. He had been employed at the plant for over fourteen years. DuPont claims to have discharged Merriman because he sabotaged his spinning machine. It is undisputed that Merriman's eight positions on the machine all ceased functioning.

There was evidence before the NLRB that the spinning machines operated erratically and that it was not unusual for numerous positions on a single machine to shut down almost simultaneously. DuPont itself now concedes that five of the eight breaks might occur in the regular course of production operations. The eight positions in question were known by machine operators to experience breaks with greater frequency than other sets of positions on the same machine. DuPont was aware that Merriman's machine had been operating particularly poorly and the company had scheduled the machine for an overhaul which was to have occurred a full month before the incident in question. That overhaul only occurred following Merriman's discharge. Additionally, DuPont's discharge of Merriman represented disparate treatment when compared with DuPont's failure even to reprimand, much less discharge, other employees who had multiple positions on their machines break simultaneously.

Thus, we enforce the NLRB's order requiring DuPont to offer James Merriman immediate and full reinstatement to his former position, or, if that position no longer exists, to a substantially equivalent position; to make him whole for losses suffered as a result of DuPont's discrimination against him; to expunge any references to the discharge from the company's personnel records and to so notify Merriman; and to post an appropriate notice.

Accordingly, the order of the National Labor Relations Board is **Enforced** without modification.

Krupansky, Circuit Judge, concurred in part and dissented in part and filed opinion.