THE CITY OF BURBANK, Petitioner-Appellant, v. ILLINOIS STATE LA-
BOR RELATIONS BOARD *et al.*, Respondents-Appellees.

First District (4th Division)   No. 86—2331

Opinion filed April 7, 1988.

Robert E. Mann and Gretchen A. Winter, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Jacqueline A. Kinnaman, of Chicago, for appellee American Federation of State, County and Municipal Employees, AFL-CIO.

JUSTICE JOHNSON delivered the opinion of the court:

The instant appeal is a direct review of three orders of the Illinois State Labor Relations Board. On August 5, 1985, respondent, American Federation of State, County and Municipal Employees, AFL-CIO (hereinafter AFSCME), filed an unfair labor practice charge with the Illinois State Labor Relations Board (hereinafter the Board), also a respondent here, in case No. S—CA—89. AFSCME alleged that petitioner, City of Burbank (hereinafter the City), had engaged in unfair labor practices when it reorganized its Public Works Department (hereinafter the Department), eliminated two foreman positions in the Department, terminated the employment of one of the foremen, Robert Randle, and assigned the other foreman, Norbert Maza, to the newly created position of deputy director.

Subsequently, the City filed two petitions for unit clarification with the Board, which were consolidated during the administrative proceedings. The petition in case No. S—UC—15 sought to exclude the Department secretary from the bargaining unit. The petition in case No. S—UC—19 sought to exclude the newly created position of deputy director from the bargaining unit.

All three cases were processed administratively in accordance with the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1601 *et seq.*) (hereinafter the Act) and the rules of the Board. In case No. S—CA—89 the Board found that the City had engaged in various unfair labor practices in violation of section 10 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1610). Further, the Board ordered the City to offer reinstatement and retroactive wages with interest to Randle, to rescind the promotion of Maza, and to take various other affirmative actions. In a separate opinion the Board dismissed the City's unit clarification petitions. In case No. S—UC—15 the Board found that the Department secretary was not a confidential employee and that there was no reason to exclude her from the bargaining unit. In case No. S—UC—19 it determined that because the position of deputy director had been found unlawfully created, the issue of its inclusion into, or exclusion from, the existing unit was moot.

On August 25, 1986, the City filed a petition with this court for direct administrative review of both the Board's decision and order in the unfair labor practice case and the Board's opinion dismissing the unit clarification petitions. The City raises as to each of the three cases enumerated above the single issue of whether the Board's fac-

tual findings and legal conclusions are supported by the manifest weight of the evidence. Additionally, the Board and AFSCME raise as an issue for review whether this court has subject matter jurisdiction over cases which involve unit clarification petitions, specifically case Nos. S—UC—15 and S—UC—19. Accordingly, before addressing the facts and merits of this appeal, we shall first direct our attention to the issue of subject matter jurisdiction.

The respondents contend that judicial review of unit clarification proceedings is not provided for by the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1601 *et seq.*). They point out that the Act empowers the board with authority to regulate labor relations and collective bargaining matters between employers, public employees, and labor organizations. The Board performs these regulatory functions in two different and distinct types of cases: representation cases and unfair labor practice cases. Section 9 of the Act governs representation cases, of which unit clarification proceedings are a part. Sections 10 and 11 of the Act govern unfair labor practice cases, with section 10 enumerating the various unfair labor practices and section 11 specifying the procedures to be followed in determining whether an unfair labor practice has been committed. The Board claims that the placement of the provision authorizing judicial review within section 11 of the Act is indicative of the legislature's intent to limit judicial review to unfair labor practice cases.

Respondents continue by arguing that to restrict judicial review to unfair labor practice cases would be consistent with the construction of the National Labor Relations Act (hereinafter NLRA) (29 U.S.C. §151 *et seq.* (1982)), after which the Illinois Act was patterned. Interpreting the NLRA, Federal courts have held that bargaining unit determinations are not final orders and that, in order to obtain judicial review, the employer must refuse to bargain and then raise the issue in subsequent unfair labor practice proceedings. At that time, the entire proceeding, including the appropriateness of the unit determination, is open to judicial review. See *Magnesium Casting Co. v. NLRB* (1971), 401 U.S. 137, 27 L. Ed. 2d 735, 91 S. Ct. 599; *Friendly Ice Cream Corp. v. NLRB* (1st Cir. 1983), 705 F.2d 570; *Pacific Southwest Airlines v. NLRB* (9th Cir. 1978), 587 F.2d 1032.

Respondents cite *City of Rockford v. Illinois State Labor Relations Board* (2d Dist. March 31, 1987), consolidated Nos. 2—86—711 & 2—87—0085, as authority for the proposition that Illinois courts have interpreted the construction of the Act to parallel that of the NLRA on the issue of whether the Act authorizes judicial review of representation cases. However, the Rockford opinion on which re-

spondents rely was withdrawn on August 7, 1987, and the official opinion, filed on the same date, is cited as *City of Rockford v. Illinois State Labor Relations Board* (1987), 158 Ill. App. 3d 166. In that opinion the court does not specifically address the issue of whether this court has subject matter jurisdiction to review representation cases.

In *Rockford,* the Board determined that the city of Rockford and the Rockford Public Library were joint employers of the library's employees and directed that an election be held. The city of Rockford and the library appealed the Board's joint-employer determination. Subsequent to the docketing of that appeal, however, an election was held, AFSCME won the election and was certified as the exclusive bargaining representative of the library's employees. The library refused to bargain until the joint-employer issue was resolved and AFSCME filed an unfair labor practice charge based on this refusal. Thus, the *Rockford* court was not presented with the specific issue of whether this court has subject matter jurisdiction of cases which are solely representation cases. In fact, the *Rockford* court stated that, "[i]nasmuch as part of the consolidated petitions seeks administrative review of a *final* order issued by the Board pursuant to section 11(e) of the Illinois Labor Relations Act dealing with unfair labor practices (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)), the joint-employer issue is open to judicial review." (Emphasis in original.) *Rockford,* 158 Ill. App. 3d at 169.

This specific issue was addressed for the first time in Illinois in *Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board* (1987), 154 Ill. App. 3d 1045. The Board and the city of Robinson argued there, as do respondents in the instant case, that representation proceedings were not judicially reviewable pursuant to section 11(e) of the Act. For this proposition they relied on judicial interpretation of the model Federal statute, the NLRA. After comparative analysis, the court found several dissimilarities between the Act and the NLRA which were pertinent to this issue. The court reasoned that, "[t]he fact that the State legislature specifically declined to adopt a certain section [or modified other sections] of the model Federal statute evidences an intent to achieve a result different from that announced by the decisions of the Federal courts [construing the NLRA]." (*Laborer's International Union,* 154 Ill. App. 3d at 1050.) Analyzing those modifications and omissions the court found this court has jurisdiction over all "final orders" entered by the Board pursuant to the Act. Thus, the only issue to be resolved here in determining jurisdiction is whether the decision of the Board

in the two unit clarification cases represents final orders.

■ The Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) governs judicial review of final decisions of any administrative agency where the act creating such agency, by express reference, adopts the provisions of the Administrative Review Law. (Ill. Rev. Stat. 1983, ch. 110, par. 3—102.) Section 3—101 of the Administrative Review Law provides, in pertinent part, as follows:

> " 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." (Ill. Rev. Stat. 1983, ch. 110, par. 3—101.)

Thus, an order, decision or determination is a judicially reviewable final order if (1) it issues from an administrative agency; (2) affects the rights, duties or privileges of parties; and (3) terminates the administrative proceedings.

■ Respondents argue that the unit clarification decisions do not affect the legal rights, duties, or privileges of any party and, for that reason, are not final decisions. We disagree. The determination as to which employee positions are within the bargaining unit necessarily affects the rights, duties, and privileges of the union and the employer as to those positions. As the Board is clearly an administrative agency subject to the Administrative Review Law, and the respondents do not raise the question of whether such proceedings before the Board were terminated by its decision, we find that the Board's decision in consolidated cases Nos. S—UC—15 and S—UC—19 is a final order of that administrative agency. As a final order, this court has jurisdiction to review the decision pursuant to section 11(e) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)). Having found that we have subject matter jurisdiction in this matter, we now turn to the merits of the consolidated cases.

In June 1983, the Illinois General Assembly approved legislation granting Illinois public employees the right to organize for collective bargaining purposes, and on July 1, 1984, the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1601 *et seq.*) went into effect. About the same time, AFSCME began an organizational drive among the employees of the City, a home rule unit with a population of 25,000.

The record discloses that in September 1984, AFSCME filed a representation petition with the newly created Illinois State Labor Relations Board on behalf of all of the employees in the Department.

In that case (No. S—RC—45, hereinafter Burbank I), the City argued that the two foremen in the Department, Norbert Maza and Robert Randle, were statutory supervisors and that these individuals should therefore be excluded from the bargaining unit. It further argued that AFSCME's proposed bargaining unit improperly included the secretary to the director of the Department, who had been regarded as a "confidential employee" as defined in section 3(c) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1603(c)).

Hearing officer William Waechter conducted an administrative hearing on the appropriate unit issue in January 1985. Foreman Randle, AFSCME's principle supporter in its attempt to become the exclusive bargaining representative of the Department's employees, testified at the hearing that he wished to be included in the bargaining unit. The hearing officer found that the two foremen served as mere conduits for work-related instructions and had no disciplinary or other supervisory authorities and, therefore, were properly included in the unit. The hearing officer also concluded that the secretary was not a "confidential employee" under the Act.

Thereafter, the City filed exceptions to the hearing officer's recommendations to the Board. The Board adopted the hearing officer's recommendations, deciding (1) that no evidence of the exercise of supervisor-type authorities was shown and that the foremen, therefore, were not "supervisors" and (2) that no "reasonable expectation" existed that the secretary's position would become confidential with the future onset of collective bargaining. The Board then directed that an election be conducted among the Department's employees to determine whether they wished to be represented by AFSCME for purposes of collective bargaining.

At the election, the City challenged the ballot cast by foreman Randle, whose status it had unsuccessfully contested. The Board's then chief administrator dismissed the challenge to Randle's ballot and directed that AFSCME be certified as the exclusive representative of the employees in the Department.

After the chief administrator's report issued, and only two days before AFSCME was certified as the representative of the Department's employees, the City passed an ordinance reorganizing the Department. Pursuant to this reorganization, the City eliminated both foreman positions and replaced them with a single new position entitled deputy director of Public Works. The ordinance that was passed described the deputy director position in language corresponding exactly to the definition of supervisor contained in section 3(r) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1603(r)). The City then "laid off"

Randle and assigned the other foreman, Maza, to the new deputy director position.

AFSCME filed an unfair labor practice charge on August 6, 1985, protesting these actions (case No. S—CA—89) and alleging that the City had violated sections 10(a)(1), (a)(2), and (a)(3) of the Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1), (a)(2), (a)(3)). Hearing officer Waechter conducted administrative hearings on this issue on November 20, December 13, and December 18, 1985. He found that, although Maza's title changed, there was virtually no change in Maza's duties. Further, the hearing officer found that, at the time of the reorganization, the City offered no explanation of its action and that the attitude and behavior of the City's agents toward Randle changed once his union activities were discovered. The Board agreed with the hearing officer's findings and adopted his recommendation.

During this time, the City filed two unit clarification petitions, case Nos. S—UC—15 and S—UC—19. In case No. S—UC—19, the City sought to exclude the newly created deputy director position from the collective bargaining unit previously found appropriate in Burbank I. In case No. S—UC—15, the City sought reconsideration as to whether there existed at that time a "reasonable expectation" that the secretary position would become confidential in the future. These cases were consolidated for hearing.

The Board issued its opinion in these unit clarification cases separate from, but at the same time as, its decision and order in the unfair labor practice case (No. S—CA—89). Again the Board agreed with the recommendations of hearing officer Waechter and dismissed both actions. In its opinion, the Board explained its dismissal of S—UC—15 by stating that "[t]he 'reasonable expectation' test was designed to determine, in the absence of a collective bargaining relationship, whether the onset of collective bargaining would reasonably bring the individual confidential duties. The test does not apply where collective bargaining is actually taking place; in such situations, we will consider the individual's *actual* duties. Here, collective bargaining has been occurring for over one year, and the Secretary performs no confidential duties. Therefore, we agree with the Hearing Officer that there is no reason to exclude her from the bargaining unit, and dismiss the City's petition." (Emphasis in original.) The Board dismissed case No. S—UC—19, finding the issue moot pursuant to its decision and order in case No. S—CA—89. The City has petitioned this court for direct review of these decisions.

Section 10 of the Act declares, *inter alia,* as follows:

"(a) It shall be unfair labor practice for an employer or its

agents:

(1) to interfere with, restrain or coerce public employees in the exercise of the rights guaranteed in this Act or to dominate or interfere with the formation, existence or administration of any labor organization ***. ***

(2) to discriminate in regard to hire or tenure of employment or any term or condition of employment in order to encourage or discourage membership in or other support for any labor organization. ***

(3) to discharge or otherwise discriminate against a public employee because he has signed or filed an affidavit, petition or charge or provided any information or testimony under this Act ***." Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1), (a)(2), (a)(3).

The Board found that the City violated sections 10(a)(1), (a)(2), and (a)(3) of the Act when it reorganized the Department to eliminate the foreman positions, terminated Randle's employment and promoted Maza to the newly created position of deputy director. The City contends that the Board's finding of an unfair labor practice was not supported by the manifest weight of the evidence.

■■ ■ In determining whether the discharge of an employee constituted an unfair labor practice, the key question for the Board to determine is whether the discharge was motivated by antiunion animus. The City argues that Randle's discharge was motivated by its need to have "first-line supervision," a legitimate business incentive. "In cases where the discharge was motivated by both legitimate business reasons and by reasons related to the employee's exercise of protected activities, courts have found an unfair labor practice only if the employee's exercise of a protected activity was a substantial or a motivating factor." (*Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 878.) Once the employee's exercise of a protected activity has been shown to have been a motivating factor in the decision to discharge, the employer must then prove by a preponderance of the evidence that the company was principally motivated by legitimate business reasons. However, "even evidence of a 'good-faith motive' for a discriminatory discharge 'has not been deemed an absolute defense to an unfair labor practice charge.' " *Rockford Township,* 153 Ill. App. 3d at 879, quoting *NLRB v. Erie Resistor Corp.* (1963), 373 U.S. 221, 229 n.8, 10 L. Ed. 2d 308, 315 n.8, 83 S. Ct. 1139, 1146 n.8.

■ Since the existence of a legitimate business reason for the City's actions does not necessarily provide a defense, this court must determine whether substantial evidence sustains the Board's conclu-

sion that the City's actions were partly or wholly motivated by the purpose of discouraging union activity. "The question of motive is one of fact, and the Board's determination will not be overturned if its conclusions drawn from credibility findings and inferences from the evidence are reasonable. [Citations.] Where the Board's conclusions are reasonable, it does not matter that we might have reached a different result had we been the fact finders. [Citation.]" (*Rockford Township,* 153 Ill. App. 3d at 879-80.) In short, if there is anything in the record which fairly supports the action of the agency, the decision is not against the manifest weight of the evidence and must be sustained on judicial review.

■ It is further well established that the Board may properly consider circumstantial evidence such as the company's knowledge of the employee's union activities (see *Turnbull Cone Baking Co. v. NLRB* (6th Cir. 1985), 778 F.2d 292, *cert. denied* (1986), 476 U.S. 1159, 90 L. Ed. 2d 720, 106 S. Ct. 2277; *NLRB v. E. I. Du Pont De Nemours* (6th Cir. 1984), 750 F.2d 524), the proximity in time between the employee's union activities and his discharge (see *E. I. Du Pont,* 750 F.2d 524; *NLRB v. Garon* (6th Cir. 1984), 738 F.2d 140), and the employer's pattern of conduct (see *Eisenberg v. Wellington Hall Nursing Home, Inc.* (3d Cir. 1981), 651 F.2d 902; *Hedison Manufacturing Co. v. NLRB* (1st Cir. 1981), 643 F.2d 32.

The record reveals that the City had actual knowledge of Randle's unionizing efforts. At the city council meeting on August 15, 1984, Randle spoke in favor of the City recognizing the union. Additionally, he testified during the representation proceedings in Burbank I, indicating his wish to be included in the bargaining unit. In fact, his testimony was key in the determination that the foremen were not supervisors.

The proximity in time between the City becoming aware of Randle's union activities and his discharge is not readily apparent. While the City clearly was aware of Randle's activities after he addressed the city council on August 15, 1984, his discharge was nearly one year later, on August 1, 1985. However, the City spent this entire time period legally contesting the inclusion of the two foremen in the bargaining unit. After it had exhausted all of the legal avenues available to it, and only two days before AFSCME was certified as the exclusive representative of the Department's employees, the City abruptly passed an ordinance reorganizing the Department and, as a result, discharging Randle.

The Board further found that the City had exemplified a pattern of conduct meant to thwart the organizing efforts of the union. The

record shows that the attitude and behavior of the City's agents towards Randle changed immediately following his appearance at the city council meeting. Relationships which had been either amiable or friendly were promptly concluded. Immediately following his statement at the city council meeting, Randle was stripped of his authority over daily job assignments and work crews, and that authority was solely vested in Maza. After the ordinance reorganizing the Department was passed, Randle was offered no explanation or motive for his termination, but was simply informed upon reporting for work that he no longer worked for the City.

▪ Thus, circumstantial evidence was presented establishing both the City's knowledge of Randle's union activities and a pattern of conduct meant to discourage unionizing efforts. Evidence of either of these facts would have been sufficient to support the Board's finding that the City's attempted reorganization was pretextual and that Randle's discharge was motivated by antiunion animus. Therefore, we hold that the manifest weight of the evidence supports the Board's decision finding that the City committed unfair labor practices in reorganizing the Department, discharging Randle, and assigning Maza to the newly created position of deputy director.

▪ The City contends next that the Board erred in dismissing the unit clarification case (No. S—UC—19), in which the City sought a determination that the newly created position of deputy director was supervisory and, therefore, should be excluded from the collective bargaining unit. It reasons that if this court decides that the Board's decision in case No. S—CA—89, the unfair labor practice case, is against the manifest weight of the evidence, then the supervisory status issue raised by case No. S—UC—19 is not moot. This court, however, found above that the Board's decision in the unfair labor practice case was supported by sufficient evidence. Therefore, the creation of the deputy director position was illegal and the issue of that position's inclusion in or exclusion from the bargaining unit is moot.

▪ The City's final contention is that the Board improperly dismissed case No. S—UC—15, which sought the exclusion of the Department secretary from the bargaining unit, finding that she was not a confidential employee. It argues that a reasonable expectation existed that the Department secretary would handle confidential labor relations information.

The Board clarified in its determination that the "reasonable expectation" test was only designed to determine, "in the absence of a collective bargaining relationship, whether the onset of collective bargaining would reasonably bring the individual confidential duties,"

and that the test "does not apply where collective bargaining is actually taking place." In such a situation, the Board explained, the test is whether the individual's actual duties are confidential.

Whether an employee actually performs confidential duties is a factual determination. This court must give great deference to the factual findings of the Board. Thus, such determinations will not be overturned on appeal unless clearly unreasonable and against the manifest weight of the evidence.

The City does not assert that the Department secretary actually performs confidential duties, although the City and the union have been engaged in collective bargaining for over a year. The Department secretary testified that there had been no change in her duties since the inception of collective bargaining. She further indicated that she did not regularly see copies of grievances filed by the Department's employees. Additionally, the record indicates that the Department director, who assigns work to the Department secretary, was not a member of the negotiating team.

From the above it is apparent that the Board's determination that the Department secretary was not a confidential employee is amply supported by the record.

For the foregoing reasons, the orders and determinations of the Illinois State Labor Relations Board are affirmed.

Affirmed.

LINN and McMORROW, JJ., concur.