THE CITY OF CHICAGO, Appellant, v. ILLINOIS LOCAL LABOR RE-
LATIONS BOARD *et al.*, Appellees.

First District (1st Division)   No. 1—87—3882

Opinion filed December 30, 1988.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and L. Anita Richardson, Assistant Corporation Counsel, of counsel), for respondent.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for petitioner Illinois Local Labor Relations Board.

Cornfield & Feldman, of Chicago (Gail E. Mrozowski, of counsel), for other petitioners.

JUSTICE QUINLAN delivered the opinion of the court:

Alice Chico (Chico) filed a complaint with the Illinois Local Labor Relations Board (Board) against her employer, the City of Chicago (City), alleging that the City had committed unfair labor practices against her in retaliation for her pro-union activity with the American Federation of State, County and Municipal Employees, Council 31 AFL-CIO (union). The complaint was investigated and went to hearing before a hearing officer, who found that five of the actions alleged

were, in fact, unfair labor practices. The officer's recommended order[1] provided that the City was to cease and desist from discouraging or discriminating against union membership and support; to stop discriminating against employees who file charges or provide information or testimony under the Illinois Public Labor Relations Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1601 *et seq.*); and to stop interfering with, restraining or coercing employees in the exercise of their rights under the Act. The hearing officer's recommended order also directed the City to rescind, withdraw and discontinue its pending disciplinary claim against Chico, remove all references to it in Chico's personnel file, and, finally, directed the City to post notices of the ruling. Exceptions to the hearing officer's recommended order and decision were filed by both parties, but the Board, nevertheless, adopted the findings of the hearing officer and the recommended remedy.

In November 1985, the union petitioned the Board to allow it to represent a bargaining unit of 45 investigative personnel in the City's office of professional standards (OPS), a division of the City's police department. OPS investigates and resolves charges regarding the use of excessive force by Chicago police officers. The petition, over the City's objections, was granted. An election was held and the union became the exclusive bargaining representative for OPS in August 1986.

While this was happening, certain problems arose between OPS and one of its investigators, Alice Chico, who was a visible and active union supporter. Chico testified in favor of the union at hearings on the petition, she attended the preelection conference as a union supporter, and, at time of the election, she served as an official union election observer. Chico alleged that there were five unfair labor practices committed by the City against her in retaliation for her pro-union activities. The alleged unfair labor practices were as follows.

(1) OPS improperly claimed that a discrepancy existed between Chico's testimony at the hearing on the union's petition for representation, in which she testified that she co-taught a class at Northeastern University, and the resume she submitted in December 1985, which the City claimed indicated that she taught the class, not that she co-taught the class, and her application for employment filed with the Department in which she did not mention anything regarding

---

[1]A recommended order is the hearing officer's suggested determination or resolution. After the recommended order is given, both parties are provided the opportunity to object to the recommended order by filing exceptions with the Board. The Board reviews the order and the objections, and either adopts the recommended order or makes its own determination. See Ill. Rev. Stat. 1987, ch. 48, par. 1611; see also 80 Ill. Adm. Code 1220.60(a) (1986).

teaching a class.

(2) In August 1986, OPS reopened a file which Chico had closed out because the complaint against the two police officers had not been sustained. Although it is not entirely clear who requested this, the reviewer of the closed file found that there was a discrepancy in the file which Chico had directed to be closed, and that additional investigation was warranted.

(3) OPS demanded that Chico provide written reasons for her absence from her desk during the union's election. Although Chico contended that she had told OPS and that OPS knew of her designation as an election observer at that time, OPS contended that they did not know or authorize her designation as an election observer.

(4) In September 1986, OPS demanded that Chico file a written evaluation of a course she had taken in criminalistics, although the course had ended in April 1986. The course was taken on Chico's own time and at her own expense, but she had her work hours rearranged to take the course.

(5) OPS initiated a complaint against Chico for disseminating confidential OPS documents in violation of a police department rule. Chico stated that when she gave the Board investigator copies of the confidential OPS documents, she told the investigator of the confidential nature of the documents and that the investigator assured her that the documents would be kept confidential.

During this time period involving the alleged unfair labor practices, Chico filed and continued to pursue her complaint against the City with the Board, alleging the above-stated matters as unfair labor practices. Chico asserted that all of the City's actions made her feel harassed and intimidated, and, additionally, as to the fifth action concerning the dissemination of the confidential documents, that she had received a 15-day suspension. As noted above, a hearing was subsequently held before a hearing officer of the Board on these charges, and the officer concluded that each act was an unfair labor practice under sections 10(a)(1), (a)(2), and (a)(3) of the Act. (See Ill. Rev. Stat. 1987, ch. 48, par. 1610.) The hearing officer, however, found that Chico's transfer to another unit in OPS[2] and the transfer of the file that had been reopened to another OPS investigator were not motivated by anti-union animus, and, thus, were not unfair labor practices. Based upon the findings that the City committed five unfair labor practices, the hearing officer issued the recommended order that the

---

[2] By mutual agreement of the parties, Chico was transferred to another OPS investigative unit in September 1986.

City cease and desist from its unfair labor practices and that OPS "rescind and discontinue its disciplinary action against Chico, and remove any and all references to the disciplinary action from [her] personnel file and any other OPS files."

The City then, also as stated previously, filed exceptions to the recommended order with the Board, but despite the filed exceptions, the Board affirmed and adopted the decision of the hearing officer. The Board specifically concurred that each of the five acts, found to be unfair labor practices by the hearing officer, were a violation of sections 10(a)(2) and (a)(3), and that these violations, in turn, constituted derivative violations of section 10(a)(1) of the Act. (See Ill. Rev. Stat. 1987, ch. 48, par. 1610.) The City has now appealed that determination to this court pursuant to section 11(e) of the Act (see Ill. Rev. Stat. 1987, ch. 48, par. 1611(e)), and Chico, the union and the Board have filed responses to this appeal.[3]

■ The City contends that the Board's determination that the first four acts were unfair labor practices was improper as a matter of law, and the determination that the fifth act was an unfair labor practice was against the manifest weight of the evidence. This appeal is taken from the order of the Board which affirmed the ruling of the hearing officer and is brought pursuant to our Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*). The scope of review on appeal of an order of an administrative agency is set forth in section 3—110 of the Administrative Review Law. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) Section 3—110 provides that every action to review a final administrative decision shall be heard and determined on all questions of law and fact presented by the entire record before the court. Moreover, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) This statute has been construed by our courts to mean that courts may not interfere with the discretionary authority and expertise vested in administrative bodies unless that authority is exercised in an arbitrary and capricious manner. *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088.

The City asserts that the Board's decision was incorrect as a matter of law as to the first four alleged acts in this case and against the manifest weight of the evidence as to the fifth act. It contends that

---

[3]For the sake of convenience, because Chico and the union filed a single brief, and have made the same arguments, any references to Chico's arguments are equally applicable to the union.

there was no evidence of any financially adverse consequence to Chico as to these four alleged unfair labor practices, and, in the absence of evidence of financially adverse consequence, a *prima facie* case of discrimination, *i.e.*, an unfair labor practice, cannot be established. Accordingly, the City argues that these four acts cannot be unfair labor practices as a matter of law. Additionally, the City asserts that the hearing officer's finding that Chico's sanction for the fifth act (the dissemination of the confidential documents in the reopened file incident) as an unfair labor practice was against the manifest weight of the evidence. The City contends that there was a legitimate business justification for the suspension because Chico broke a valid police department rule, and, since this legitimate rule violation was the motivating factor for the suspension, this activity could not constitute an unfair labor practice.

Chico, on the contrary, argues that the term "discriminate," as used in section 10 of the Act, does not require any "discipline" or monetary loss. She claims that she was intimidated and harassed by the City's first four acts and that this harassment is sufficient to constitute discrimination under the Act. In any event, she contends that all of the unfair labor practices had an adverse tangible impact on her job tenure and her conditions of employment. Chico also asserts that the evidence here amply supported the Board's finding that the City's primary motivation for the fifth act was its unlawful anti-union animus. She contends that the City was clearly aware of her pro-union activities during the time period preceding the disclosure of the confidential documents and her resulting suspension, and that the disclosure and suspension took place immediately following her discussion with the Board investigator concerning the very charges which form the basis of this appeal.

The Board argues, as does Chico, that its decision was proper as a matter of law as to the first four acts. The Board asserts that discrimination is not synonymous with adverse financial consequence and to equate the two would leave wronged, harassed employees without redress for improper actions by the employer, where no adverse financial consequence results. Here, it contends, the fact that Chico was harassed was sufficient to establish a *prima facie* case of discrimination as to each of the first four acts. The Board also argues that, as to the fifth act, the evidence presented proved that the primary motivating force behind the City's action against Chico for disclosure of the confidential documents was to interfere with Chico's right to be an active union member. To avoid liability for discrimination, the City must have shown more than merely some evidence of a legitimate mo-

tive for its action. The City must have shown that the legitimate motive was the primary motivating force. The Board claims that the City's unsupported assertion of a legitimate business reason for its action failed to establish that this reason was the primary motivating factor for the charge against Chico and her resulting suspension. Thus, the Board concludes, the hearing officer correctly found that the allegedly legitimate motive here was merely a pretext for the City's primary motive for Chico's suspension, its anti-union animus.

■ The City first claims that the hearing officer incorrectly found, as a matter of law, that Chico stated *prima facie* cases of discrimination as to the first four acts. Under Illinois law, the standard of review to be applied to issues which concern an agency determination on a question of law, such as whether a party has stated a *prima facie* case, is whether the agency abused its discretion. (See *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 496, 524 N.E.2d 561, 576-77.) The Illinois Public Labor Relations Act (the Act) sets forth the definition of an unfair labor practice. (Ill. Rev. Stat. 1987, ch. 48, par. 1601 *et seq.*) Specifically, section 10(a) of the Act states that it shall be an unfair labor practice for an employer or its agents:

"(1) to interfere with, restrain or coerce public employees in the exercise of the rights guaranteed in this Act or to dominate or interfere with the formation, existence or administration of any labor organization ***;

(2) to discriminate in regard to *** tenure of employment or any term or condition of employment in order to *** discourage membership in or other support for any labor organization ***;

(3) to discharge or otherwise discriminate against a public employee because he has signed or filed an affidavit, petition or charge or provided any information or testimony under this Act." Ill. Rev. Stat. 1987, ch. 48, par. 1610(a).

■ *Prima facie* cases of unfair labor practices were established for each of the first four acts alleged here. The explicit language of section 10(a)(2) states that an employer may not "discriminate in regard to hire or tenure of employment or *any term or condition* of employment." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 1610(a)(2).) Furthermore, section 10(a)(3) clearly provides that an employer may not "discharge or *otherwise discriminate*." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 1610(a)(3).) No mention is made of any requirement of adverse tangible result or adverse financial consequence resulting from such discrimination. Indeed, case law

involving the unfair labor practices section of the Federal National Labor Relations Act, which is substantially similar in nature to section 10 of the Illinois Act, amply supports the Board and Chico's contention that adverse financial consequence is not a requirement for a finding that an unfair labor practice occurred. (29 U.S.C. §158 (1987); Ill. Rev. Stat. 1987, ch. 48, par. 1610.) For example, in *NLRB v. Village IX, Inc.* (7th Cir. 1983), 723 F.2d 1360, the Seventh Circuit specifically found that one of the employer's acts alleged to be discriminatory, *i.e.*, the act of delaying the mailing of invitations to a company party to two pro-union employees, constituted discrimination and was an unfair labor practice.

Moreover, it is directly contrary to the policy of the Act, as well as the express language of section 10, to require that discrimination in the context of an unfair labor practice must be accompanied by an adverse tangible result or financial consequence. (See Ill. Rev. Stat. 1987, ch. 48, par. 1610.) If we were to accept the City's contention, which we believe is contrary to the law itself, then an employee whose employer consistently intimidated and harassed him or her and constantly subjected his or her work performance to the strictest scrutiny would have no recourse under the Act. Such a situation is directly contrary to the intent of the Act and is, in fact, exactly the type of activity the Act seeks to prohibit. Harassment and intimidation alone can certainly be discriminatory practices under the Act. Thus, mere lack of an adverse financial consequence or adverse job action does not defeat a claim as a matter of law. We, consequently, find that all four of the actions alleged constituted *prima facie* cases of discrimination under the Act.[4]

We next consider the City's challenge to the Board's finding as to the fifth act as being contrary to the manifest weight of the evidence. When a party questions the factual findings of an administrative agency, the standard to be applied on review is whether the agency's findings are contrary to the manifest weight of the evidence. (*Graham v. Illinois Racing Board* (1986), 145 Ill. App. 3d 383, 389, 495 N.E.2d 1013, 1017.) The key inquiry in the examination concerning whether the action here constituted an unfair labor practice under the Act is whether the action was motivated by anti-union animus or

---

[4]Although this resolves the direct issue as to whether Chico stated *prima facie* cases of discrimination, the parties have indirectly argued regarding the sufficiency of the evidence presented as to the first four acts. Because this was not directly raised as an issue on appeal, we need only note that the record on appeal presents more than a sufficient evidentiary basis for the Board's finding that the first four acts constituted unfair labor practices.

was in retaliation for the employee's exercise of a legally protected right, *i.e.*, reporting unfair labor practices. (See Ill. Rev. Stat. 1987, ch. 48, par 1601 *et seq.; City of Burbank v. Illinois State Labor Relations Board* (1988), 168 Ill. App. 3d 885, 523 N.E.2d 68.) When motivating factors include both legitimate business reasons as well as reasons related to the employee's exercise of a protected activity, courts have found the existence of an unfair labor practice only if the employee's exercise of the protected activity was a substantial or motivating factor. (*Burbank,* 168 Ill. App. 3d at 893, 523 N.E.2d at 73, citing *Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 878, 506 N.E.2d 390, 399.) However, once it has been established that the employee's exercise of a protected activity was the motivating factor for the employer's alleged unfair labor practice, the employer must prove, by a preponderance of the evidence, that the principal motivation was, in fact, based only on legitimate business reasons. But, even evidence of a good-faith motive is not an absolute defense to an unfair labor practice charge. (*Burbank,* 168 Ill. App. 3d at 893, 523 N.E.2d at 73, citing *Rockford,* 153 Ill. App. 3d at 879, 506 N.E.2d at 400.) Thus, if anything in the record fairly and substantially supports the agency's action, the decision is not against the manifest weight of the evidence, and, consequently must be upheld on review. *Greer* (1988), 122 Ill. 2d 462, 524 N.E.2d 561; see also *Burbank,* 168 Ill. App. 3d 885, 523 N.E.2d 68.

■ The City, on appeal, contends only that the evidence presented as to the fifth act was not sufficient. A review of the record shows that the finding below that the fifth act was an unfair labor practice was amply supported by the evidence. The hearing officer not only considered the facts presented, but he also properly considered all of the circumstances and inferences surrounding the facts, such as the timing of the City's actions. See *Burbank,* 168 Ill. App. 3d 885, 523 N.E.2d 68; see also *NLRB v. E.I. DuPont De Nemours* (6th Cir. 1984), 750 F.2d 524.

The fifth action, which ultimately resulted in Chico's 15-day suspension, occurred when the City learned of Chico's disclosure of confidential OPS documents to the Board investigator on August 18, 1986. The documents were disclosed only for the purpose of the investigation into the alleged unfair labor practices against Chico, which was part of her complaint against the City. Chico told the investigator of the confidential nature of the documents in the file and the investigator assured her that they would be kept confidential. When Dr. Fogel and the other OPS personnel met with the investigator to discuss Chi-

co's complaint with the Board, and discovered that she had disseminated confidential documents to the investigator, a disciplinary action was immediately filed against Chico for violation of a police department rule which forbids dissemination or removal of files or records. Chico received a 15-day suspension for violation of this rule.

The hearing officer, in finding this action to be an unfair labor practice, noted that files which form the basis of certain investigations, etc., are often provided to government agencies or attorneys, and, if not provided, can be subpoenaed. We agree and find that the determination as to the City's action of suspending and harassing Chico for dissemination of confidential material to the independent Board investigator, when that confidential material was crucial to her claim against the City, was proper in light of all of the facts and circumstances presented in this case.

Additionally, we find this situation comparable, as the Board did, to the situation presented in *United States v. City of Milwaukee* (E.D. Wis. 1975), 390 F. Supp. 1126, where the court held that a Milwaukee police department's threat of application of its rule prohibiting dissemination of confidential police business was an improper infringement on the right of the Justice Department attorneys and their representatives to communicate with potential witnesses, and would, the court said, have an improper chilling effect on enforcement of the Civil Rights Act. (See 42 U.S.C. §2000e *et seq.* (1987).) We find that the enforcement of the police department rule here would have a similar effect. The timing of the incident between Chico and the City, as well as the circumstances, provides a substantial basis for finding that the primary motivating factor for Chico's suspension was not based upon a legitimate business reason, but was rather, as the Board found, a pretext for discrimination against Chico as a result of its anti-union animus. The Board, therefore, correctly found the City's action of filing charges and suspending Chico for the disclosure of confidential documents to be an unfair labor practice.

Accordingly, for all of the reasons stated above, the decision of the Board is affirmed in its entirety.

Judgment affirmed.

MANNING and O'CONNOR, JJ., concur.