**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PRICE'S PIC–PAC SUPERMARKETS, INC., Respondent.**

No. 82–1033.

United States Court of Appeals, Sixth Circuit.

Argued March 15, 1983.

Decided May 3, 1983.

---

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Michael David Fox (argued), Washington, D.C., for petitioner.

Robert F. Houlihan, Donald P. Wagner (argued), Stoll, Keenon & Park, Lexington, Ky., for respondent.

Before ENGEL and CONTIE, Circuit Judges, and ALDRICH, District Judge.*

PER CURIAM.

The National Labor Relations Board (Board) has applied for enforcement of an order finding that Price's Pic-Pac Supermarkets, Inc. violated § 8(a)(1) and (3) of the National Labor Relations Act (Act) by:

1. Coercively interrogating and polling employees about a union's organizational campaign,

2. Creating an impression of surveillance of union activity and engaging in such surveillance,

3. Threatening employees with discharge, physical injury, business closure and other reprisals for supporting union organizational efforts,

4. Ordering an employee not to speak to co-workers about the union,   .

5. Offering an employee a promotion and wage increase in order to induce that worker to refrain from supporting the union and

---

* The Honorable Ann Aldrich, U.S. District Judge for the Northern District of Ohio, sitting by designation.

6. Discharging three employees in order to discourage union activity.

To remedy these violations, the Board ordered the company both to cease and desist from violating the Act and to reinstate three employees with back pay. Although no representation election has ever been held, the Board also approved a bargaining order.

The company now contends that substantial evidence does not support the Board's finding of § 8(a)(1) and (3) violations. It argues in the alternative that the Board should have required that an election be held rather than imposing a bargaining order. For the reasons presented below, we enforce the Board's order.

## I.

The Administrative Law Judge (ALJ) found the following facts. The defendant engages in the retail sale of groceries at a store located in Prestonburg, Kentucky. The events forming the basis of this litigation occurred between November 12 and 20, 1979. Jodie Ward, a representative of the Food Store Employees Union, and Jewel Cockerham, a cashier at the store, arranged an organizational meeting at a local motel on November 12. Fourteen store employees attended the meeting and signed union authorization cards. Cockerham subsequently obtained eight additional cards from company employees.

At 4:00 P.M. on November 16, 1979, store manager Whitten discharged Cockerham. Although the company claims that it terminated Cockerham for being rude to customers, the ALJ found that this explanation was pretextual and that Cockerham had been discharged for engaging in union organizing.

At 6:00 P.M. the same evening, company president Taylor Price confronted employee Hurd in the stockroom. When Hurd told Price that he supported the union, Price stated that he would close the store rather than negotiate with a union. Price gave Hurd one day to reconsider his position.

On November 17, Whitten summoned employee Prater to his office. Prater had signed an authorization card. When asked what he knew about the union, Prater refused to answer and returned to work. Ten minutes later, Whitten and Price accosted Prater. Whitten told Price that Prater had lied about his union activities and ordered Prater to clean the milk cooler, a job normally done when the cooler was empty.

Finding the cooler full of milk, Prater explained to his immediate superior that the milk might spoil were it removed and the cooler cleaned. While the two considered this matter, Whitten returned and told Prater that if he refused to discuss the union with Whitten, then he should discuss it with no one or risk being physically beaten for doing so. Whitten added that although Prater would not be discharged, the latter would be made to wish that he had been terminated. Prater then quit and was told to punch out. The ALJ ruled this a constructive discharge.

Later that morning, employee Ousley was called to the office. Although Ousley denied union involvement, Whitten responded that he knew that Ousley was one of the employees who had signed authorization cards at the organizational meeting. He then threatened to close the store if the union were approved and offered Ousley a raise and promotion to head cashier if she would cease her union activities.

At about noon on November 17, Price and Whitten asked Hurd if he had changed his mind about the union. When Hurd responded that he still favored the union, Price told Hurd to punch out and leave. The ALJ ruled this a discharge.

Several hours later, Whitten spoke to employees Jesse and Phillip Meade. Whitten informed Jesse both that he knew the latter had signed an authorization card and that the store would close if the union prevailed. Furthermore, employees attending a union meeting scheduled for November 19 would be fired. The store manager also asked Phillip how he intended to vote. After Phillip stated that he was unsure, Whitten said that if the union were approved, both he and Phillip would lose their jobs.

Whitten scheduled an employee meeting for Sunday, November 18. During this meeting, he displayed certain financial records (which were presented neither to the ALJ nor the Board) and again threatened to close the store if the union prevailed. While Whitten promised that no one would be fired for union involvement, he admitted that Price had discharged Hurd for precisely that reason. Individuals were also asked if they still supported the union.

On November 19, Whitten threatened to discharge Jesse and Phillip Meade if they attended that evening's union meeting. The meeting nevertheless occurred as scheduled at Cockerham's house. As Hurd and the Meades left in Hurd's car, Price drove his auto from a gas station located near the home. Price flashed his headlights as he followed Hurd's car. The three employees then returned to Cockerham's house and observed Price circling the block until 2:30 A.M.

## II.

We hold that substantial evidence supports the finding of § 8(a)(1) violations. The Board found five such violations, the first of which is that the defendant coercively interrogated and polled employees about the union. While questioning employees about a union is not *per se* unlawful, *NLRB v. Armstrong Circuit, Inc.*, 462 F.2d 355, 357 (6th Cir.1972), the Board's assessment of coercive effect, if reasonable, should be sustained. *Cf. Henry I. Siegel Co. v. NLRB*, 417 F.2d 1206, 1214 (6th Cir. 1969), *cert. denied*, 398 U.S. 959, 90 S.Ct. 2175, 26 L.Ed.2d 545 (1970) (Board's determination of coercive effect of employer opinions).

The ALJ cited numerous examples of coercive interrogation and polling. For instance, Price accompanied a question to employee Hurd concerning whether the latter supported the union with threats that the store would close and that Hurd had one day to reconsider his pro-union position. Whitten asked Phillip Meade how Meade would vote and then stated that both would lose their jobs if the union prevailed. Furthermore, Whitten asked individuals if they favored the union at an employee meeting during which unlawful threats of plant closure occurred. *See infra.* These and other examples cited by the ALJ comprise substantial evidence upon which to base the conclusion that the company's interrogation and polling activities were coercive.

The defendant also transgressed § 8(a)(1) by creating the impression of surveillance of union activity. Such an impression was created, for instance, when Whitten told both Ousley and Jesse Meade that he already knew that the two had signed authorization cards. *See NLRB v. Rich's Precision Foundry, Inc.*, 667 F.2d 613, 624–25 (7th Cir.1981). Price wrongfully engaged in actual surveillance of union activity when he watched Cockerham's house, followed three employees as they left the meeting and circled Cockerham's home in an auto until 2:30 A.M. *See NLRB v. Tru-Line Metal Products Co.*, 324 F.2d 614, 616 (6th Cir.1963).

Third, the company violated the Act by threatening discharges, physical injury and business closure if the employees continued to support the union. On the subject of threatened discharges, the ALJ found that on November 16, Price ominously advised Hurd to reconsider his pro-union stance. On November 17, Whitten told Jesse Meade that employees attending future union meetings would be fired. Although the company claims to have retracted all such statements at the November 18 employees' meeting, Whitten threatened on the very next day to discharge Ousley and the Meades if they attended the organizational meeting scheduled for that evening.

On the topic of physical injury, the ALJ found that Whitten threatened employee Prater with beatings if the latter discussed the union with fellow workers. Finally, the company unlawfully threatened to close the Prestonburg store if the union were accepted. The defendant responds, however, that since its statements were mere predictions of the economic consequences of unionization, its comments were protected under *NLRB v. Gissel Packing Co., Inc.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).

■ This contention is without merit. The Supreme Court held in *Gissel* that: If there is any implication that an employer may or may not take action solely on his own initiative for reasons unrelated to economic necessities and known only to him, the statement is no longer a reasonable prediction based on available facts but a threat of retaliation based on misrepresentation and coercion, and as such without the protection of the First Amendment. We therefore agree with the court below that "[c]onveyance of the employer's belief, even though sincere, that unionization will or may result in the closing of the plant is not a statement of fact unless, which is most improbable, the eventuality of closing is capable of proof." As stated elsewhere, an employer is free only to tell "what he reasonably believes will be the likely economic consequences of unionization that are outside his control," and not "threats of economic reprisal to be taken solely on his own volition." ...

395 U.S. at 618–19, 89 S.Ct. at 1942–1943 (citations omitted). In the present case, the defendant failed to present either to the ALJ or to the Board the financial records relied upon in making the statements in question. Moreover, the ALJ determined that the company had no clear idea of what the union's demands would be. Under these circumstances, we hold that substantial evidence supports the conclusion that the defendant's comments about business closure were not factual predictions of unavoidable consequences but rather were threats of volitional economic reprisal.

Fourth, the Board found that the company violated employee Prater's section 7 rights by ordering him not to speak about the union with anyone except store manager Whitten. Since the ALJ obviously credited Prater's account of this episode, substantial evidence underlies the Board's conclusion.

Finally, the defendant violated § 8(a)(1) by offering employee Ousley a raise and promotion if she would cease her union involvement. *See NLRB v. Max Factor &*
*Co.,* 640 F.2d 197, 204 (9th Cir.1980), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 840 (1981). Though Whitten denied making the offer, the ALJ credited Ousley. Since credibility determinations are for the ALJ rather than for this court, *see, e.g., NLRB v. Downslope Industries, Inc.,* 676 F.2d 1114, 1116 (6th Cir.1982); *NLRB v. Frederick's Foodland, Inc.,* 655 F.2d 88, 89 (6th Cir.1981) the Board's finding is adequately supported.

## III.

■ The Board next held that in addition to the § 8(a)(1) violations, the defendant transgressed § 8(a)(3) by discharging three employees in order to discourage union activity. This court has held that if an employee would not have been terminated but for his union sympathies, then the employer has violated the Act. *NLRB v. Lloyd A. Fry Roofing,* 651 F.2d 442, 446 (6th Cir.1981). Thus, the critical issue is the employer's actual motivation for the discharge. *NLRB v. Cement Transport, Inc.,* 490 F.2d 1024, 1028, (6th Cir.), *cert. denied,* 419 U.S. 828, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974). Since direct evidence of motivation is difficult to obtain, however, motive may be inferred from the surrounding circumstances. *NLRB v. G & S Metal Products Co.,* 489 F.2d 441, 443 (6th Cir.1973). If substantial evidence underlies the ALJ's finding of improper motive, this court should enforce even if it would have decided differently on *de novo* review. *NLRB v. Supreme Bumpers, Inc.,* 648 F.2d 1076, 1077 (6th Cir.1981).

■ The company contests the ALJ's finding that employee Cockerham was discharged for spearheading the organizational campaign. It asserts that it terminated Cockerham for being rude to regular customers and that it first discovered that union activity was afoot only after Cockerham told employee Hicks that she intended to raise the firing at the next union meeting.

For several reasons, the ALJ ruled the company's claims pretextual. First, the complaining customer(s) was never identi-

fied and supervisor Tackett, who was present during the alleged conversation between a customer and Whitten, did not corroborate Whitten's story. Second, the ALJ noted that since the store in question is small, management probably knew of the organizational campaign before 4:00 P.M. on November 16. Third, Price questioned Hurd about the union only two hours after Whitten fired Cockerham. The company does not explain how it suddenly became aware of Hurd's union involvement during the time between Cockerham's discharge and the Price-Hurd conversation. Under the factual circumstances presented, the ALJ and the Board were entitled to infer that the defendant possessed prior knowledge of the organizational campaign and discharged Cockerham solely as a result of her union efforts.

 Substantial evidence also supports the conclusion that Hurd and Prater were discharged in violation of § 8(a)(3). Whitten admitted at the employees' meeting of November 18 that Hurd had been fired because of his pro-union position. While the defendant argues that the discharge was only intended to be temporary or resulted from a personal clash between Hurd and Price, we agree with the Board that Whitten's admission, coupled with the factual circumstances, adequately supports the conclusion that Hurd was terminated solely because of his union activity.

The company next contends that Prater was discharged not for his union involvement, but because he had violated a "no solicitation" rule. At the evidentiary hearing, the defendant neither demonstrated the existence of, nor explained the content of, this rule. The ALJ termed this alleged justification "incredible" and a "transparent fiction." We hold that substantial evidence supports this conclusion.

## IV.

In the alternative, the defendant argues that the Board erred in imposing a bargaining order instead of requiring that an election be held. We refuse to reach the merits of this claim because the company never presented it to the Board. 29 U.S.C. § 160(e). The record reflects that after the ALJ filed his decision, which included the bargaining order, the company filed objections which excepted "to each and every provision of the Remedy and the recommended Order of the Administrative Law Judge." It is apparent from the brief accompanying the objections, however, that the defendant's ground for excepting to the Remedy was not that a bargaining order was inappropriate under *NLRB v. Gissel Packing Co., Inc.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), but rather was that the company had not violated § 8(a)(1) and (3). These objections have already been addressed. Since the *Gissel* problem was not presented to the Board, we are precluded from considering it here.

The order of the National Labor Relations Board is ENFORCED.