876 F.2d 105
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WXON-TV, INC., Petitioner/Cross-Respondent
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner
 Nos. 88-5799, 88-5963.
 United States Court of Appeals, Sixth Circuit.
 June 5, 1989.
 
 Before MILBURN and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner WXON-TV petitions for review, and the NLRB cross-applies for enforcement, of an order finding that the company engaged in unfair labor practices. The case presents factual issues on which the Board's findings may be set aside only if they are not supported by substantial evidence in the record as a whole. See Turnbull Cone Baking Co. v. NLRB, 778 F.2d 292, 295 (6th Cir.1985) (per curiam), cert. denied, 476 U.S. 1159 (1986). Although the Board might well have gone the other way, we believe its findings are supported by substantial evidence in the record; we shall therefore grant enforcement.
 
 
 2
 Petitioner first challenges the Board's finding that station vice-president Douglas Johnson coercively interrogated station employee Carl Scott prior to a representation election. Shortly before the election, Mr. Scott was called into Mr. Johnson's office for a one-on-one meeting and was asked what he thought about the union. Scott said that he was not in favor of the union. Johnson then said that "he wanted to squash this thing and squash it big" and that a vote for the union would be a "slap in the face of management." Scott was aware that Johnson was about to decide whether or not to eliminate Scott's department and his job. As it turned out, the department was abolished, and Scott was fired, on the same day the NLRB certified that the union had won the election.
 
 
 3
 Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(1), provides that an employer may not "interfere with, restrain, or coerce employees in the exercise of [their collective bargaining] rights...." Whether employer interrogation concerning union activities has the impermissible effect of interfering with, restraining, or coercing employees in the exercise of their rights is determined by examining the total context of the interrogation from the standpoint of the employee. NLRB v. E.I. DuPont de Nemours, 750 F.2d 524, 528 (6th Cir.1984) (per curiam). The determination of coercive effect is a determination of fact which must be sustained if supported by substantial evidence. NLRB v. Price's Pic-Pac Supermarkets, 707 F.2d 236, 239 (6th Cir.1983) (per curiam).
 
 
 4
 Although there was no explicit threat that Scott would be fired if the union won the election, both men were aware that Johnson was contemplating the elimination of Scott's job. The question about Scott's thoughts on the union and the statements that a vote for the union would be a "slap in the face of management" and that Johnson wanted to "squash this thing and squash it big," coming from someone with considerable economic power over the employee and coming in a private meeting shortly before a hotly contested election, could be interpreted as tending to coerce the employee's free exercise of his rights under the Labor Management Relations Act.
 
 
 5
 Petitioner also challenges a finding by the Board that the company's treatment of an employee named JoAnn Thompson after the expiration of her maternity leave constituted discrimination on the basis of her union activities. Ms. Thompson was hired by the station as a film editor in 1983. She became active in union activities in 1985 and was transferred to the station's traffic department shortly thereafter. Ms. Thompson took pregnancy leave in September of 1985. She informed management that she was ready to return at the end of October. The station would not permit her to return to her previous position, offering her a weekend maintenance job instead. The company's stated reason was that there had been an increase in errors by the traffic department while Ms. Thompson was working there, and that a large number of those errors were attributable to her. She had not been warned before she started her pregnancy leave that her job in the department was in jeopardy. There was evidence that other employees whose job performance had been regarded as unsatisfactory had been given warnings and a chance to redeem themselves.
 
 
 6
 Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(3), prohibits "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization...." The Board's general counsel bears the burden in Sec. 8(a)(3) cases of showing that anti-union animus contributed to the employer's decision. NLRB v. Wright Line, 251 N.L.R.B. 1083 (1980), enforced, 662 F.2d 899 (1st Cir.1981), cert. denied, 455 U.S. 989 (1982). If anti-union animus is established, the burden shifts to the employer to demonstrate that the allegedly discriminatory action would have been taken anyway. Id. See generally NLRB v. Transportation Management Corp., 462 U.S. 393 (1983).
 
 
 7
 The company's other unfair labor practices--its coercive interrogation of Carl Scott and a refusal to bargain over the transfer of work previously performed by bargaining unit members--were cited by the Board as evidence of anti-union animus. The Board was not persuaded that Ms. Thompson would not have been reinstated in the traffic department even in the absence of such animus.
 
 
 8
 The ALJ found the testimony of the company's main witness on this issue "incredible," and concluded that the company's "contention that Ms. Thompson was an incompetent employee was a pure fabrication." The company failed to introduce documentary evidence to back up its claim that she was responsible for the revenue losses the company attributed to her. It also failed to introduce documentary evidence for any other monthly period, making it impossible accurately to compare revenue losses occurring while Ms. Thompson worked in the traffic department with revenue losses during other periods. Even if Ms. Thompson's performance was inadequate, it was open to the Board to find that she was not treated like other employees whose job performance was found to be inadequate.
 
 
 9
 For the foregoing reasons, the petition for review is DENIED, and the cross-application for enforcement is GRANTED.