951 F.2d 349
 139 L.R.R.M. (BNA) 2056
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ACTION AUTO STORES, INC., Respondent.
 No. 90-6446.
 United States Court of Appeals, Sixth Circuit.
 Dec. 10, 1991.
 
 Before RYAN and ALAN E. NORRIS, Circuit Judges, BELL, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner, the National Labor Relations Board ("the Board"), applies for enforcement of its June 26, 1990 decision and order finding Action Auto Stores, Inc., ("the Company") in violation of sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. ("the Act"). The Board's decision and order are reported at 298 NLRB No. 135. For the reasons that follow, we grant enforcement of the Board's order.
 
 I.
 
 2
 The Company is a Michigan corporation engaged in the retail sale and distribution of automobile parts and related products. It has facilities throughout the state of Michigan, including 9 facilities in Saginaw, Bay City, Midland, Shields, and Essexville ("the Saginaw stores").
 
 
 3
 The Company became aware of union activity in the Saginaw stores in the fall of 1986. The distribution of union cards began in December, 1986, and by February 18, 1987, 38 of the 72 employees in the bargaining unit had signed union cards. Nevertheless, when the election was held on April 9, 1987, the Union was soundly defeated.
 
 
 4
 On July 14, 1987, Local 876, United Food & Commercial Workers International Union, AFL-CIO-CLC ("the Union") filed an unfair labor practices charge against the Company alleging that the Company violated sections 8(a)(1) and (3) of the Act.
 
 
 5
 The Board issued an unfair labor practice complaint against the Company on July 14, 1987. Hearings were held before an Administrative Law Judge ("ALJ") between September, 1987 and March, 1988. In an opinion dated February 1, 1989, the ALJ found that the Company violated section 8(a)(1) of the Act by engaging in surveillance and creating the impression of surveillance of union activities; coercively interrogating and threatening retaliation of employees by way of garage closure, loss of jobs, disparate treatment and loss of wage increases and promotions; instructing an employee not to discuss the union with other employees; reassigning an employee for union activity, and requesting employees to surrender their union authorization cards.
 
 
 6
 The ALJ also held that the Company violated §§ 8(a)(1) & (3) by discharging 2 employees for union activity. The ALJ recommended entry of a cease-and-decease order, an order for the Company to recognize and bargain with the Union, and the reinstatement of the two discharged employees.
 
 
 7
 The Company filed exceptions to the ALJ's decision and moved to reopen the record to introduce evidence of employee turnover. On June 26, 1990 the Board affirmed the ALJ's rulings, findings, and conclusions and adopted the recommended Order. The Board also denied the Company's motion to reopen the record, noting that evidence of employee turnover would not affect the validity of the bargaining order. Thereafter the Board filed this petition for enforcement of its order.
 
 
 8
 The Company denies the commission of any unfair labor practices and appeals the issuance of a bargaining order and the refusal of the Board to reopen the record.
 
 II.
 
 9
 Section 160(e) of the Act provides that "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). "Where there is substantial evidence in the record as a whole to support the Board's conclusions, they may not be disturbed upon appeal." Kux Mfg. Co. v. NLRB, 890 F.2d 804, 808 (6th Cir.1989); Indiana Cal-Pro, Inc. v. NLRB, 863 F.2d 1292, 1297 (6th Cir.1988). The substantial evidence test is also applied to the Board's application of the law to the facts, and the Court may not displace any of the Board's reasonable inferences. NLRB v. Ohio Masonic Home, 892 F.2d 449, 451 (6th Cir.1989). Evidence is considered substantial if it is adequate, in a reasonable mind, to uphold the decision. Emery Realty, Inc. v. NLRB, 863 F.2d 1259, 1262 (6th Cir.1988).
 
 1. Violation of 8(a)(1)
 
 10
 Section 8(a)(1) provides that it is an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7, which includes the right to self-organization and to join labor organizations. Indiana Cal-Pro, 863 F.2d at 1296 n. 1.
 
 
 11
 The Company challenges 25 separate findings made by the ALJ. It contends that the substantial evidence on the record shows that no violation occurred, as the events were isolated and de minimis.
 
 
 12
 The majority of the challenges raised by the company dispute the characterization the ALJ gave to events--i.e., that questioning was coercive as opposed to casual and non-threatening, or that statements regarding loss of jobs or closure of the garage were threatening as opposed to merely informative. The company claims that the inferences drawn by the ALJ are unreasonable and not supported by the record. In making this claim, however, the Company focuses on words and events taken in isolation. The ALJ, on the other hand, properly looked to the totality of the circumstances: who the players were, where the conversations took place, and the context of the statements. "In determining whether a statement is a coercive threat, the Board considers the 'total context' of the situation and 'is justified in determining the question ... from the standpoint of employees over whom the employer has a measure of economic power.' " Indiana Cal-Pro, 863 F.2d at 1299 (quoting NLRB v. E.I. DePont De Nemours, 750 F.2d 524, 528 (6th Cir.1984)).
 
 
 13
 Moreover, a reviewing court may not displace the Board's choice between two fairly conflicting views even though the court would justifiably have made a different choice had the matter been before it de novo. NLRB v. Walton Mfg. Co., 369 U.S. 404, 405 (1962). This Court cannot say that the Board's findings were not fairly drawn from the evidence. Accordingly, they will not be displaced on appeal.
 
 
 14
 Respondent also challenges a number of findings on the basis that some of the testimony relied on by the ALJ was contradicted, or was not corroborated by other witnesses. These arguments go to the credibility of the witnesses. The Court "ordinarily will not disturb credibility evaluations by an ALJ who observed the witnesses' demeanor." Roadway Express, Inc. v. NLRB, 831 F.2d 1285, 1289 (6th Cir.1987). When there is a conflict in the testimony, it is the Board's function to resolve questions of fact and credibility. NLRB v. Aquatech, Inc., 926 F.2d 538, 544 (6th Cir.1991).
 
 
 15
 Although there may be some debate about individual findings by the ALJ, upon review it appears that the Board's conclusion that the Company's actions had a tendency to interfere with, restrain, or coerce employees in the exercise of their section 7 rights to form, join or assist labor organizations is supported by substantial evidence.
 
 2. Violation of 8(a)(3)
 
 16
 Section 8(a)(3) makes it an unfair labor practice for an employer to discriminate in regard to tenure of employment or any term or condition of employment to discourage membership in any labor organization. 29 U.S.C. § 158(a)(3). The ALJ found that the company violated section 8(a)(3) of the Act with respect to the discipline and discharge of two employees, Mark Henry and John Hafner. Respondent alleges that the Board's findings are not supported by substantial evidence on the record.
 
 
 17
 If an employee would not have been discharged but for his union sympathies, then the employer has violated the Act. NLRB v. Price's Pic-Pac Supermarkets, Inc., 707 F.2d 236, 240 (6th Cir.1983). The critical issue is the employer's actual motivation for the discharge. Id.
 
 
 18
 The Company claims it discharged Henry and Hafner for specific instances of misconduct. The ALJ ruled that the Company's explanations were pretextual in light of its knowledge of their union activities, the previous threats of retaliation against them for their union activities, the relatively inconsequential nature of the acts complained of, the shifting explanations for the discharges, and the absence of evidence that they would have been discharged in the absence of known union activities.
 
 
 19
 The evidence is sufficient to support the ALJ's findings.
 
 3. Gissel Bargaining Order
 
 20
 In NLRB v. Gissel Packing Co., 395 U.S. 575, 606-08 (1969), the Supreme Court reiterated the Board's authority to issue a remedial bargaining order in exceptional cases marked by outrageous and pervasive unfair labor practices, if they are of such a nature that their coercive effects cannot be eliminated by the application of traditional remedies. 395 U.S. at 613-14. The Court also sustained the use of a bargaining order in less extraordinary cases where there is a showing that at one point the union had a majority and:
 
 
 21
 the Board finds that the possibility of erasing the effects of past practices and of ensuring a fair election ... by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order....
 
 
 22
 Id. at 614-15.
 
 
 23
 Although this Court has expressed hesitancy to enforce a bargaining order where the union's majority status is established through authorization cards, it has upheld such orders where three conditions occur: (1) the union has obtained authorization cards from a majority without misrepresentations or other unfair practices; (2) the employer has dissipated significantly the union's majority by the commission of § 8(a)(1) violations; and (3) a fair election cannot be had under all the circumstances. Indiana Cal-Pro, 863 F.2d at 1300.
 
 
 24
 Respondent claims the Board abused its discretion in issuing a Gissel bargaining order because the union did not attain majority status. In the alternative, even assuming majority status, respondent contends that the alleged violations were not sufficiently egregious to justify the imposition of a bargaining order.
 
 
 25
 a. Majority Status
 
 
 26
 The stipulated bargaining unit as of February 18, 1987, was comprised of 72 employees. The Board found that 38 had signed union cards.
 
 
 27
 The Company contends that all or virtually all of the cards were unreliable because their purpose was to obtain an election. They were, in fact, dual purpose cards. They authorized union representation and were also used to seek an election.
 
 
 28
 The Company has cited a number of cases where courts have required close scrutiny of dual purpose authorization cards for reliability. See, e.g., Dayco Corp. v. NLRB, 382 F.2d 577 (6th Cir.1967); NLRB v. Shelby Mfg. Co., 390 F.2d 595 (6th Cir.1968). These cases, however, pre-date Gissel.
 
 
 29
 In Gissel the Supreme Court held that employees are bound by the clear language of what they sign unless that language is deliberately and clearly canceled by a union adherent with words calculated to direct the signer to disregard and forget the language above his signature. 395 U.S. at 606-08.
 
 
 30
 In this case the ALJ found that the following language on the cards unambiguously designated and authorized the union to represent the individuals:
 
 REPRESENTATION AUTHORIZATION
 
 31
 I hereby designate and authorize the United Food and Commercial Workers Union, Local 876, to represent me for the purpose of collective bargaining, and herewith withdraw any previous authorization given to any other organization to represent me for the above mentioned purpose.
 
 
 32
 The booklet also advises that when a majority of employees sign authorization cards, "[t]he employer may then recognize the union without the necessity of a government conducted election."
 
 
 33
 Information on the cards and in the union booklet that the cards would also be used to secure an election does not negate the clear representation authorization. "There is nothing inconsistent in handing an employee a card that says the signer authorizes the union to represent him and then telling him that the card will probably be used first to get an election ..." Id. at 606-07.
 
 
 34
 In this case the ALJ's finding that there was insufficient evidence from which to conclude that the individuals were persuaded to ignore the language above their signatures is supported by the record.
 
 
 35
 The Company also challenges the authenticity of several of the signatures. However, the ALJ found that the Company's expert did not squarely rebut the Union's handwriting expert or the ALJ's independent analysis and conclusion that the signatures were valid.
 
 
 36
 There is substantial evidence to support the finding that the union obtained authorization cards from a majority without misrepresentations or other unfair practices.
 
 
 37
 b. Sufficiently Egregious
 
 
 38
 The Company claims that the Board abused its discretion by entering a bargaining order because there is no evidence in the record which demonstrates that the effects of the alleged violations cannot be erased by the traditional election remedy. As noted in NLRB v. Rexair, Inc., 646 F.2d 249, 251 (6th Cir.1981), to support a bargaining order the Board must make findings or a detailed analysis as to the residual impact or the likelihood of recurrence of any of the unfair labor practices. The bargaining order will not be enforced if it is based on conclusory statements unsupported by sufficient facts, or if the Board's reasoning consisted simply of conclusions without factual explication. Id.
 
 
 39
 In this case the Board adequately supported its conclusion that the bargaining order was the only satisfactory remedy. The ALJ discussed in detail the Company's 8(a)(1) and (3) violations which it summarized as follows:
 
 
 40
 Respondent committed 15 acts of coercive interrogation; made 6 threats of garage closure, 3 other threats of job loss, and 3 threats of unspecified retaliation; threatened one employee with disparate treatment; conditioned a raise on union failure in the campaign; threatened to withhold wage increases and promotions if the union were successful; engaged in surveillance of a union meeting and created an impression it was so engaged; solicited employee grievances and requested the surrender of union authorization cards in exchange for a remedy of said grievances; told an employee he had been reassigned to another work location because he supported the Union; instructed an employee not to discuss the union with other employees; issued warnings to an employee because he was a union adherent; and discharged two employees because they were known or suspected to be union sympathizers.
 
 
 41
 (ALJ's Decision, p. 68).
 
 
 42
 The ALJ persuasively reasoned that a bargaining order was necessary to remedy the past violations based upon the serious and pervasive nature of the unfair labor practices, and the fact that they were reasonably calculated to indelibly and coercively impress employees with the company's readiness to take measures against their very job security if they continued in prounion activity. Moreover, as noted by the Board, many of the violations were "hallmark" violations, including threats of discharge and numerous threats of plant closure, which are among the most flagrant of unfair labor practices. Indiana Cal-Pro, 863 F.2d at 1301-02.
 
 
 43
 The Board has primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review. NLRB v. Joyce Western Corp., 873 F.2d 126, 128 (6th Cir.1989) (citing Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 898 (1984)). The Board's discretionary decisions regarding appropriate remedies are entitled to deference or special respect. Indiana Cal-Pro, 863 F.2d at 1302; Local Union No. 5741, United Mine Workers v. NLRB, 865 F.2d 733, 735 (6th Cir.1989), cert. denied, 110 S.Ct. 88 (U.S.1989). This Court's review is limited to a determination whether the Board has abused its discretion in fashioning its remedial order. Id.
 
 
 44
 The Board's bargaining order is supported by sufficient facts and analysis, and given the normal deference that should be accorded to the Board's discretionary decisions regarding appropriate remedies, the order should be enforced.
 
 
 45
 c. Employee Turnover
 
 
 46
 Finally, the Company argues that the Board abused its discretion by entering a bargaining order without considering evidence of turnover among employees and management officials.
 
 
 47
 The Board correctly noted that even were it to consider the evidence of turnover, such evidence would not affect the validity of the bargaining order. The Board found that the unfair labor practices were pervasive and enduring and that the proffered evidence would have revealed that a substantial number of the employees affected by the company's unlawful conduct still work for the Company, that the majority of the Company's management is still in place, and that those remaining were responsible for a substantial number of the unfair labor practices. This case is readily distinguishable from Impact Industries, Inc. v. NLRB, 847 F.2d 379, 383 (7th Cir.1988), relied on by the Company, where the court held that the passage of 7 years coupled with an alleged 87% employee turnover and a complete change in management, were relevant in determining whether other, more traditional remedies might have been an effective means of rectifying the past unfair labor practices. Id.
 
 
 48
 We conclude that the Board did not err in its denial of the motion to reopen and that it was justified in determining that a Gissel bargaining order was warranted.
 
 IV.
 
 49
 Accordingly, for the reasons stated, the Board's petition for enforcement is GRANTED.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation