951 F.2d 350
 139 L.R.R.M. (BNA) 2056
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Plaintiff-Appellant,
v.
NEW MEDICO HEALTH CARE CENTER OF MICHIGAN, INC., Defendant-Appellee.
 No. 91-5271.
 United States Court of Appeals, Sixth Circuit.
 Dec. 20, 1991.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges; and HOOD, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff-appellant, National Labor Relations Board ("NLRB" or "BOARD") requests that this Court enter a judgment enforcing its order requiring New Medico Health Care Center of Michigan, Inc. ("New Medico") to engage in collective bargaining. The NLRB ruled that New Medico violated Section 8(a)(5) and (1) of the National Labor Relations Act ("the Act") (29 U.S.C. 158(a)(5) and (1)) by refusing to bargain with the American Federation of State, County and Municipal Employees ("AFSCME") after it had been certified by the NLRB as the exclusive bargaining representative of an appropriate unit of New Medico's employees. For the reasons stated below, we ENFORCE the order of the Board.
 
 
 2
 * In December 1988, AFSCME filed a petition with the NLRB seeking to represent a unit of employees at Greenbriar Care Center ("Greenbriar") in Howell, Michigan. Pursuant to a stipulated election agreement, the NLRB conducted an election by secret ballot among the unit employees of Greenbriar on February 17, 1989.** A tally of the ballots showed that of the 88 valid votes cast, 41 were for AFSCME and 37 were against it. AFSCME challenged the remaining 10 ballots, leaving the outcome of the union election in doubt.
 
 
 3
 Greenbriar leased the real property at the Howell site from Health and Rehabilitation Properties Trust ("HRPT"), a Maryland real estate investment trust. In January 1989, a HRPT official contacted New Medico Health Care Associates, Inc. ("NMA"), New Medico's parent company, and asked if NMA would be interested in becoming the tenant of the Greenbriar facility because Greenbriar had failed to meet its lease obligations. On February 17, 1989, New Medico agreed to a three-year lease beginning on March 1, 1989.
 
 
 4
 On February 27, 1989, Greenbriar employees were notified by letter of New Medico's impending assumption of Greenbriar's lease. The letter encouraged Greenbriar employees to apply for positions with New Medico. Employees were told that New Medico would consider years of service with Greenbriar to establish the wage rate for hired employees. New Medico's wages were higher than Greenbriar's. The letter further stated that employees would receive credit for their seniority cumulated at Greenbriar. New Medico hired virtually all of Greenbriar's employees and supervisors. The one known exception was Greenbriar's administrator, who apparently declined New Medico's offer. Moreover, New Medico continued to care for Greenbriar's former patients.
 
 
 5
 During this same period, New Medico began correcting problems listed on a 21 page deficiency report from the State of Michigan. According to NMA's president testimony, New Medico planned to make substantial changes at the facility. Such changes included upgrading the facility and hiring twice the number of employees to accommodate a greater focus on the treatment and rehabilitation of traumatic head injuries. He testified that these changes would be completed in about two years.
 
 
 6
 A NLRB hearing was scheduled to resolve the controversy surrounding the ten challenged ballots, and thus the outcome of the election. Prior to the commencement of the hearing, AFSCME withdrew challenges to five of the ten remaining ballots. The tally was now 43 for AFSCME, 40 against and five challenged ballots. At the hearing, however, the parties agreed to stipulate to four of the remaining five challenged ballots. The parties stipulated that the challenges to the ballots cast by Christine Schullar and Margie Kuhn be overruled and that their ballots be opened and counted. The parties also stipulated that the ballots cast by Joan Kehres and Barbara McCreary be sustained, and that their ballots not be counted. The remaining ballot was that of Susan Griffin ("Griffin"). AFSCME challenged Griffin's ballot on the grounds that she worked as a supervisor at Greenbriar.
 
 
 7
 At the hearing, several former Greenbriar employees testified that Griffin exercised supervisory powers over employees. These testimonies revealed that Griffin hired, disciplined and made schedule changes. Griffin's supervisor, however, testified that Griffin did not exercise independent authority.
 
 
 8
 The hearing officer issued a Report on July 28, 1989, finding that New Medico was a successor to Greenbriar, and that Griffin was a supervisor within the meaning of § 2(11) of the Act. The hearing officer also recommended that the two ballots stipulated to be opened remain sealed since they no longer affected the outcome of the election.***
 
 
 9
 On March 1, 1990, the Board adopted the hearing officer's findings and recommendations and certified the AFSCME as New Medico's employees exclusive bargaining representative. On March 19, 1990, New Medico refused to bargain with its employees. On March 22, 1990, AFSCME filed an unfair labor practice charge.
 
 
 10
 New Medico filed an answer contending that the hearing officer erred by sustaining the challenge to Griffin's ballot and by determining that New Medico was the legal successor to Greenbriar. The NLRB granted summary judgment against New Medico. The NLRB found that New Medico had litigated all of the representation issues that it now sought to raise in its answer. Consequently, the NLRB ordered New Medico to cease and desist in its refusal to bargain. This timely appeal followed.
 
 II
 
 11
 The scope of our review of the Board's findings is limited to determining whether the findings are supported by substantial evidence on the record as a whole. See 29 U.S.C. § 160(e), (f); Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). "The Board's application of the law to the facts is also reviewed under the substantial evidence standard, and the Board's reasonable inferences may not be displaced on review even though the court might justifiably have reached a different conclusion had the matter been before it de novo." Turnbull Cone Baking Co. v. NLRB, 778 F.2d 292, 295 (6th Cir.1985), citing NLRB v. United Ins. Co., 390 U.S. 254, 260 (1968). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Universal Camera, 340 U.S. at 477. Where a Board's order has "no reasonable basis in law," such an order will not be enforced. Ford Motor Co. v. NLRB, 441 U.S. 488, 497 (1979).
 
 III
 
 12
 The Board argues that its findings and conclusions were supported by substantial evidence on the record as a whole. New Medico argues that the Board's findings that New Medico was the legal successor to Greenbriar and that Susan Griffin was a supervisor were not supported by substantial evidence. We find the Board's findings and conclusions are supported by substantial evidence.
 
 A.
 
 13
 New Medico argues that it is not a "successor" to Greenbriar and thus should not be bound by the NLRB's Certification of AFSCME. The Supreme Court in NLRB v. Burns International Security Services, Inc., 406 U.S. 272 (1972), enunciated the test for determining whether or not a new company is indeed the successor to the old. "This approach ... is primarily factual in nature and is based upon the totality of the circumstances of a given situation ..." Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1987). A successor business is bound by the predecessor's bargaining obligations if there is "substantial continuity" between the enterprises. Id. In determining whether "substantial continuity" exists, the NLRB examines whether: (1) there is continuity of the same business; (2) the new employer uses the same facility; (3) the new employer hires the same or substantially the same work force; (4) the same jobs exist under the same work conditions; (5) the same supervisors are employed; (6) the same equipment and machinery is used; and (7) the same product or service is conducted. Id.
 
 
 14
 There is substantial evidence in the record to support the NLRB's finding of "substantial continuity." New Medico operates a nursing care center as did Greenbriar. The health care operation was continued uninterrupted and in the same facility. Employee responsibilities remained the same, and virtually all of Greenbriar employees were hired except for the administrator, who rejected New Medico's offer. New Medico also informed Greenbriar employees that their years of service with Greenbriar would be used to establish their new salaries. Finally, testimony indicated that New Medico continued to care for the same patients without a substantial change in operation.
 
 
 15
 New Medico offers several reasons as to why the hearing officer erred in finding "substantial continuity," the most novel of which is New Medico's assertion that the successorship issue should have been determined as of the date AFSCME was certified, March 1, 1990, and not the date on which New Medico took over the nursing home, March 1, 1989. New Medico contends that because the successorship issue is used to determine whether a new employer has a bargaining obligation with the union, there must be a certified union before it can be determined whether the employer has an obligation to bargain. Thus, because the union was not certified on March 1, 1989, the court erred in determining the successorship issue as of this date.
 
 
 16
 We have found no cases that address the situation at bar. We choose, however, to follow the thoughtful reasoning of the hearing officer in the present case. Clearly, the successorship issue would have been determined as of March 1, 1989, had the challenged votes not been determinative. We can think of no reason why the result should be different because it took more than a year to resolve the election. Any other position only encourages new owners to circumvent its obligations by filing challenges to certification. By the time these challenges are resolved, the bargaining unit may no longer represent "a substantial and representative complement" of employees. Consequently, we find that the NLRB did not err in finding that New Medico succeeded to Greenbriar's bargaining obligations on March 1, 1989.
 
 
 17
 New Medico next argues that the NLRB erred by granting summary judgment and thus not allowing New Medico to litigate the successorship issue before an administrative law judge. New Medico argues that this is error because the hearing officer found them guilty of unfair labor practices prior to AFSCME certification, and thus before any unfair labor practice could have been committed. We find no merit to this claim. We have already held that the NLRB may determine the successorship issue before the resolution of challenges to a representation election. Likewise, it follows that the hearing officer may also determine prior to the resolution of challenges to a representation election that New Medico participated in unfair labor practices. Surely, a company's liability for these violations depends on whether the election yields Certification.
 
 
 18
 Finally, New Medico argues that it changed the employees working conditions and is, therefore, not a successor to Greenbriar. New Medico contends that it raised the employees' salaries and added significant benefits including a new bonus program. In Briggs Plumbingware, Inc., v. NLRB, 877 F.2d 1282 (6th Cir.1989), the new employer argued that it was not a successor because it changed the "pay scale and policies concerning absence, vacations, jury duty, holiday pay and shift deferential." Id. at 1286. This Court rejected this claim, finding substantial continuity because the work force and operations remained the same. Similarly, in the present case, New Medico hired virtually all of Greenbriar's employees, and testimony at the hearing revealed that there were no substantial changes in the operations. Thus, we find no merit to this argument.
 
 B.
 
 19
 New Medico next argues that the NLRB's finding that Susan Griffin was a supervisor within the meaning of § 2(11) of the Act is not supported by substantial evidence on the record. New Medico contends that Griffin was not a supervisor since she did not exercise independent judgment as personnel coordinator.
 
 
 20
 Section 2(11) of the Act, 29 U.S.C. § 152(11) defines a "supervisor" as:
 
 
 21
 ... [A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such actions, if in connection with the foregoing the exercise of such authority is not of merely routine or clerical nature, but requires the use of independent judgment.
 
 
 22
 The indicia of supervisory authority are written in the disjunctive. Consequently, the possession of any one indicium enumerated in § 2(11) is sufficient to show an employee is a supervisor provided the individual has the authority to use independent judgment. NLRB v. City Yellow Cab Co., 344 F.2d 575, 580-82 (6th Cir.1965). It is also well settled that the exercise of routine or clerical authority does not elevate an individual to the status of supervisor. NLRB v. Child-World, Inc., 817 F.2d 1251, 1254 (6th Cir.1987). Similarly, an employee does not become a supervisor if his or her participation in personnel actions is limited to a reporting function and does not amount to an effective recommendation that retention, reward or discipline be given. Beverly Enterprises v. NLRB, 661 F.2d 1095, 100 (6th Cir.1981). Further, because of the Board's expertise in resolving disputes concerning supervisory status, absent an abuse of discretion, its determination on this matter will not be disturbed. Williamson Piggly Wiggly, Inc. v. NLRB, 827 F.2d 1098, 1100 (6th Cir.1987).
 
 
 23
 There is substantial evidence in the record to support the hearing officer's conclusion that Susan Griffin exercised supervisory authority. The ability to hire is a primary indicia of supervisory authority. NLRB v. Publishers Printing Co., Inc., 625 F.2d 746, 749 (6th Cir.1980). Griffin testified that she interviewed and hired employees. But Griffin also testified that she was told to hire all applicants that "walked, talked, and breathed, not necessarily all at the same time ...," thus implying that she did not possess independent authority to hire. The hearing officer, however, found Griffin did have independent authority because one of Greenbriar employees testified that Griffin inquired as to his qualifications and motivations for working for Greenbriar.
 
 
 24
 Moreover, evidence also indicated that Griffin exercised independent authority to initiate disciplinary actions. Julie Borchard and Mark Cobb testified that they took Griffin to where a fellow employee was sleeping. She awoke the employee, who was subsequently discharged, and demanded that he return to work. Griffin then asked two nurses to write letters that detailed occasions in which they observed this employee sleeping. Griffin also gathered employee witnesses for the disciplinary hearing and asked questions as well as provided documents from the disciplined employee's file during the hearing.
 
 
 25
 Next, evidence was adduced to support the hearing officer's finding that Griffin acted as a supervisor in approving scheduling changes. Don Nidefski testified that when he went to Griffin with requested schedule changes, she looked at the schedule and either approved or disapproved the requests. In each case, she gave an immediate response without checking with anyone. Moreover, Borchard and Cobb testified that Griffin approved their scheduling changes on the spot when they asked for time off to attend a birthday celebration.
 
 
 26
 We find that these duties resemble the exercise of authority that is contemplated by the statute. Additionally, we note that a Board may consider in its determination the employee conduct that creates the impression of supervisory authority. See, e.g., Jeffrey Manufacturing Division v. NLRB, 654 F.2d 944, 950 (4th Cir.1991). Griffin often signed written warnings and termination letters as immediate supervisor and distributed them without the employees knowledge that she was not responsible for the letter. Similarly, Griffin was the lone signatory on several termination notices.
 
 
 27
 Accordingly, we find substantial evidence in the record to support the Board's finding that Susan Griffin is a supervisor under § 2(11) of the Act.
 
 IV.
 
 28
 For the foregoing reasons, we AFFIRM the Board's determinations and ENFORCE the Board's order requiring New Medico to bargain with AFSCME as the exclusive bargaining representative of the appropriate unit of New Medico's employees.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 **
 The bargaining unit was defined as follows:
 All full-time and regular part-time nurses aides, physical therapy aides, laundry employees, activity employees, dietary aides, cooks, housekeeping employees, ward clerks and maintenance employees employed by Greenbriar at its facility located at 3003 W. Grand River Avenue, Howell, Michigan; but excluding all LPNs, RNs, technical employees, casual employees, temporary employees, guards, and supervisors as defined by the Act.
 
 
 ***
 Since Griffin, as a supervisor, was prohibited from voting, the two ballots stipulated to be opened could no longer affect the election because at best, the results would be 43 for and 42 against